State vs. Keasley.

## No. 12,815.

### THE STATE OF LOUISIANA VS. CORNELIUS KEASLEY.

Act 44 of 1890 is not unconstitutional on the ground that under its terms, one no t guilty of an offence might be convicted.

It would be the duty of the court to see that no judgment be rendered which would convict an innocent person whose act of carrying arms for legitimate purposes the statute never intended to denounce.

The word " wilful " contained in the title of the act, but not contained in the body of the statute, was not an illegality rendering it proper or lawful to annul and avoid the statute. The court may refuse to receive a verdict not responsive to the charge.

A verdict finding the accused guilty, following the language of the statute is not defective.

The information charged the defendant with shooting with a dangerous weapon to kill and murder.

The verdict returned, that the accused was guilty of shooting " with intent to kill." Under Art. 44 of 1890, an offence of the same generic class is the offence with which he was charged.

" Whatever conveys the idea to the common understanding will suffice and all fair intendment of the verdict will be made to support it." Bishop, Sec. 1005; 4th Edition.

ON APPEAL from the Twentieth Judicial District Court for the Parish of Assumption. *Guion, J.*

*M. J. Cunningham*, Attorney General, and *G. A. Gondran*, District Attorney, for Plaintiff, Appellee.

*John Marks* for Defendant, Appellant, *Beattie & Beattie*, amici curiæ.

Argued and submitted May 7, 1898.

Opinion handed down June 22, 1898.

The opinion of the court was delivered by

BREAUX, J. The information filed against the defendant charged him with having wilfully, feloniously and of his malice aforethought, shot Joseph Antoine with a dangerous weapon (a pistol), with intent the said Joseph Antoine then and there feloniously, wilfully and of his malice aforethought to kill and murder.

The jury returned a verdict of guilty of shooting with a dangerous weapon with intent to kill. Upon this verdict he was sentenced to six months' imprisonment.

He appealed.

Four bills of exception were reserved by him during the trial.

In the first bill he sets forth, that he objected to the judge's charge in which he instructed the jury, that a verdict of guilty of shooting with a dangerous weapon could be found under Act 44 of 1890.

The objections were, that this act is unconstitutional, as it infringes upon the right to bear arms and upon the freedom and liberty to protect one's rights.

Further: That the body of the statute made no provision against wilfully shooting.

In the second bill of exceptions he complained of the court's action in having ordered the jury to change the form of the verdict.

The first verdict read: Guilty of shooting " *at* " with a dangerous weapon with intent to kill. The word " at ?" italicized by us was not inserted in the second verdict returned by the jury.

Accused through counsel contends, that the first verdict, though not responsive, was one which illustrated the fact that there was merely a shooting at, and that the court was without authority to give the instruction which was given.

The third bill of exceptions relates to the action of the court in overruling defendant's motion for a new trial.

The fourth bill of exceptions, we take it, is closely related to the second bill of exceptions; it was directed against the second verdict after the change had been made under the instructions of the court.

The motions made for a new trial and in arrest of judgment, and the grounds urged as contained of record, are substantially similar to the grounds narrated in the bills of exceptions.

In our judgment, Act 44 of 1890 is not unconstitutional on the ground that the law-making power attempted to denounce as a crime an act which might be consistent with innocence.

Conceding the fact asserted, the only effect of an act of that character would be to impose the duty upon those charged with its enforcement and interpretation of reading out of the law as not intended to be covered by it, all acts not criminal in their nature.

In State vs. Voss, 49 An. 446, we had occasion to consider a similar point and to arrive at the same conclusion as here.

With reference to the absence of the word "wilful" in the body of the law. In our view, the law is not thereby made defective. The

General Assembly has the power to omit that word and denounce as a crime the act here denounced.

Besides the presence of the word "wilful" in the title could not be ignored in the proceedings.

Indictments as to the character of the act charged would have to be made to conform with the requirements of the statute under the title.

We pass to the objection urged to the instruction given by the court regarding the form of the verdict.

Counsel for the accused does not controvert the proposition that a court may decline to receive an illegal or imperfect verdict.

He contends that the result was after the court had given its instructions regarding their power to make a change, the jury instead of making correction and change resumed its deliberations and changed a finding previously announced. That the first verdict showed that the jury had concluded that though defendant had shot at Antoine he had missed him. That this finding was changed in consequence of the court's instructions regarding their first finding.

The following from Bishop's Criminal Procedure directly applies:

"When the jury comes in with a verdict it is not as of course to be immediately received in the form in which it is rendered. And it is probably the correct doctrine that the judge may require the jury to pass on the verdict upon the whole indictment in such form of words as shall constitute a sufficient finding in point of law, or if they refuse decline altogether to accept the verdict. It seems quite plain that in every case of a verdict rendered the judge or prosecuting officer or both should look after its form and its substance so as to prevent a doubtful or insufficient finding from passing into the record of the court." Vol. 1, Sec. 1004.

It was proper for the court to give additional instructions to the jury in order that they might bring in a verdict in accordance with their finding. We did not discover that the court directed the jury what should be their verdict. Hypothetically, as is usual in giving instructions to juries, he gave them the information that they might render a verdict in another form if their finding of the facts warranted such a finding. We do not infer that there was an intimation thrown out by the court to the jury as to the kind of verdict to be returned.

A court may instruct a jury as to the form of the verdict, without trenching upon questions relating to the substance.

It is settled by repeated decisions, where the jury returns an incomplete verdict, or one not responsive to any charge in the indictment, the court may direct them to retire and bring in a proper verdict. It follows, that the court may inform the jury—without necessarily suggesting what should be the verdict—why it is that the verdict is incomplete, or not responsive to the charge.

In support of the position, that the first return of the jury should have remained unchanged and should have been entered as the verdict in the case, the accused assumed, that it was the intention of the jury to find him guilty of shooting at, and not of shooting; in other words, that while he had " shot at," he had not actually shot and wounded the prosecuting witness.

He concedes, that the first verdict was not responsive to the charge. This admission, we take it, disposes of the point.

The courts have repeatedly held, that it was proper in the trial judge not to receive a verdict not responsive to the charge.

The defendant is without right to control the verdict by assuming that the unresponsive verdict was really the verdict intended and no other; that it contained a true account or statement of the facts it was the jury's intention to find.

We pass to a consideration of defendant's objection grounded on the illegality of the verdict. It reads, " Guilty with a dangerous weapon with intent to kill."

The verdict is in the language of the statute. It follows, we think, that it was a legal verdict. They found the defendant guilty of the act which the statute denounces. " The verdict being in the language of lay people, need not follow the strict rules of pleadings or be otherwise technical. Bishop Crim. Pro., Vol. 1, Sec. 1005.

Here the jury followed the very words of the statute. While in view of the title of the statute it is proper that the indictment or information should set forth the wilful intent, the verdict which does not contain the words is not, in our view, thereby made defective. The information charged the accused with the intent to kill and murder; they found him guilty of the lesser offence of the same generic class: Intent to kill. To that extent they limited their verdict. It was a partial verdict completely covering the crime, the jury intended to find.

It is therefore ordered, adjudged and decreed that the verdict of the jury and sentence of the court be and they are affirmed.

NICHOLLS, C. J., dissents.